# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

**In re:**

HELEN O. SEIBOLD,

**Debtor.**

**Bankruptcy Case No. 05-41325**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

  Dave E. Gabert, Pocatello, Idaho, Attorney for Debtor.

  R. Sam Hopkins, Pocatello, Idaho, Chapter 7 Trustee.

### Background

In this dispute, chapter 7 Debtor Helen Seibold ("Debtor") asks the Court to order trustee R. Sam Hopkins to turn over a portion of the sale proceeds realized from the sale of her vehicle because, she argues, they are exempt. Docket No. 30. Trustee asserts that he avoided a security interest Debtor had granted to a creditor on the vehicle, and that under § 551,[1] the avoided security interest is

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, and this Court's Local Bankruptcy Rules, Rules 1001.1–9034.1, as

MEMORANDUM OF DECISION - 1

preserved thereby allowing him to retain all of the otherwise exempt proceeds for distribution to unsecured creditors. After a hearing conducted on June 14, 2006, the Court took the matter under advisement. The following memorandum constitutes the Court's findings of fact, conclusions of law, and disposition of the issues. Fed. R. Bankr. P. 7052; 9014.

**Facts**

Debtor filed for bankruptcy under chapter 7 of the Bankruptcy Code on June 20, 2005. She claimed an exemption in her car, a 2001 Chevy Tracker, under Idaho Code § 11-605(3) on Schedule C. She also listed Lynn Olsen on Schedule D as a creditor holding a claim of $11,000 secured by the same vehicle. Docket Nos. 1, 3. On August 10, 2005, Debtor amended her schedules, deleting the exemption claimed in the vehicle and changing the status of Mr. Olsen from a secured to an unsecured creditor. Am. Sched. C, D, F, Docket No. 10.

In the interim, Trustee had investigated the facts concerning the alleged Olsen lien on the car. He advised Mr. Olsen that, in his opinion, the lien claimed in the car was unperfected and therefore avoidable by a trustee. Stip., Docket No. 13. Trustee thereafter entered into a stipulation with Mr. Olsen

---

promulgated and enacted prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005). Debtor's bankruptcy petition preceded the Act's effective date of October 17, 2005 for the provisions applicable here.

MEMORANDUM OF DECISION - 2

whereby the creditor voluntarily surrendered the certificate of title to Trustee and agreed to file an unsecured claim. *Id.*

On December 1, 2005, Debtor filed a second amended Schedule C again asserting a $3,000 exemption in the vehicle under Idaho Code § 11-605(3), and adding another exemption in the car under Idaho Code § 11-605(10) for $800. Docket No. 14.

The Court ultimately ordered Debtor to give possession of the vehicle to Trustee, who then filed a notice of his intent to sell it. Docket Nos. 19, 20. The vehicle was sold at auction on April 8, 2006, and after the costs of sale were paid, Trustee received $6,386.63 in proceeds. Docket No. 25. Debtor then filed the instant motion seeking to enforce her $3,800 in exemptions in the vehicle. Docket No. 30.

At the June 14 hearing, the parties presented no evidence or testimony, but agreed that Mr. Olsen, who happens to be Debtor's father, had loaned Debtor $15,000 to purchase the car. Trustee represented Mr. Olsen had given him a copy of an amortization schedule listing the payments required to be made by Debtor to Mr. Olsen to repay the loan. However, the agreement between Debtor and Mr. Olsen was oral, and no other documentation memorializing Debtor's agreement with her father existed. In particular, apparently no written

MEMORANDUM OF DECISION - 3

security agreement was ever executed by Debtor in favor of Mr. Olsen. Both parties also agreed that the vehicle's certificate of title lacked the proper notation indicating that Mr. Olsen held a security interest in the vehicle.

Trustee conceded that he did not object to Debtor's amended claims of exemption in the vehicle, and that the exemptions are therefore deemed allowed.[2]

### Arguments of the Parties

Trustee argues Mr. Olsen's security interest in the vehicle was unperfected and was avoided by virtue of his stipulation with Mr. Olsen. Therefore, Trustee insists § 551 operates to preserve the avoided lien for the benefit of the bankruptcy estate. Since the vehicle sale proceeds were less than the balance due on the loan of about $11,000, Trustee asserts he is entitled to distribute all of the sale proceeds to Debtor's unsecured creditors.

Debtor, on the other hand, argues that her father never had an enforceable secured interest in the auto and, as a result, Trustee can be in no better position under § 551. Debtor believes she is entitled to receive $3,800 from the proceeds from the sale of the car. The Court agrees with Debtor.

---

[2] *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992) (holding that, unless a party in interest objects, property claimed as exempt is deemed exempt, even absent a colorable statutory basis for claiming the exemption).

MEMORANDUM OF DECISION - 4

**Disposition**

**A. Mr. Olsen Did Not Have An Enforceable Security Interest.**

The nature and extent of security interests are determined by state law. *Philip Morris Capital Corp. v. Bering Trader, Inc.* (*In re Bering Trader, Inc.*) 944 F.2d 500, 502 (9th Cir. 1991). With respect to a motor vehicle, the creation and attachment of a security interest are governed by Article Nine of the Uniform Commercial Code, *Simplot v. Owens*, 805 P.2d 449, 450 (Idaho 1990), while perfection of that security interest is governed by the Idaho Vehicle Titles Act, Idaho Code §§ 49-501–530, unless the vehicle is held by the debtor as inventory for sale, *Simplot v. Owens*, 805 P.2d 477, 480 (Idaho Ct. App. 1990) (citing Idaho Code § 49-512). It was clear, even absent testimony, that Debtor held the Chevy Tracker vehicle for her personal use.

Under Article Nine, a security interest attaches to collateral and becomes enforceable against the debtor when "(1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and . . . (A) the debtor has authenticated a security agreement that provides a description of the collateral . . . ." Idaho Code § 28-9-203.[3]

---

[3] Neither party argued whether the previous version or the revised version of Article Nine applied. Revised Article Nine became effective July 1, 2002. *See In re Wiersma*, 283 B.R. 294, 299 (Bankr. D. Idaho 2002) (explaining the effective dates and application of Revised Article Nine). The distinction is of no moment, however, because

MEMORANDUM OF DECISION - 5

Under the UCC, "authentication" means either "to sign" or to "otherwise adopt a symbol, or encrypt or similarly process a record . . . ." Idaho Code § 28-9-102(7). The official comments explain that the term "authenticate" generally replaces the language in Former Article Nine requiring debtors to "sign" a written security agreement so as to include authentication of all records, including intangible computer generated records and not just tangible writings, within the concept of a security agreement. Idaho Code § 28-9-102 cmt. 9(b). But it is clear that some form of writing or record is required in order to satisfy the UCC statute of frauds. Idaho Code § 28-9-203 cmt. 2 (explaining that "enforceability requires the debtor's security agreement and compliance with an evidentiary requirement in the nature of a statute of frauds.").

A "security agreement" is defined as "an agreement that creates or provides for a security interest." Idaho Code § 28-9-102(73). *Simplot* explains

> no magic words are necessary to create a security
> interest and . . . the agreement itself need not even
> contain the term 'security interest.' This is in keeping
> with the policy of the code that form should not prevail
> over substance and that, whenever possible, effect
> should be given to the parties' intent.

---

even under the more relaxed standards of Revised Article Nine, no enforceable security interest arose under these facts.

MEMORANDUM OF DECISION - 6

*Simplot*, 805 P.2d at 452 (quoting *Idaho Bank & Trust Co. v. Cargill*, 665 P.2d 1093, 1097 (Idaho Ct. App. 1983)). Even with the revisions, the liberal policy of the UCC was not changed, and neither the definition of the term "security agreement" nor the authentication requirement:

> rejects the deeply rooted doctrine that a bill of sale, although absolute in form, may be shown in fact to have been given as security. Under this Article, as under prior law, a debtor may show by parol evidence that a transfer purporting to be absolute was in fact for security.

Idaho Code § 28-9-203 cmt. 3.

Here, no written security agreement in any form was ever authenticated by Debtor. Indeed, there was no writing produced, not even a bill of sale or an application for a certificate of title, evidencing the parties' intent to create a secured interest in Mr. Olsen's favor. Absent a writing or some other record constituting an authenticated security agreement, Idaho Code § 28-9-203(b) is not satisfied, and no enforceable security interest was created.[4]

**B. Without an Enforceable Lien To Avoid, § 551 Does Not Apply.**

---

[4] Debtor's representations in her schedules that Mr. Olsen held a lien on her vehicle are not sufficient to overcome the requirements of the UCC that some writing, authenticated by the debtor, exist to evidence the parties' intent. *In re Bannon*, 92 I.B.C.R. 7, 8 (Bankr. D. Idaho 1992) (holding that the debtor's schedules, even if they represented the debtor's belief that she granted a security interest to the creditor, constituted insufficient evidence upon which to find that a security agreement had been created).

MEMORANDUM OF DECISION - 7

> Section 551 of the Bankruptcy Code provides:
>
> Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

The Court addressed the operation of § 551 in *In re Mingo*, 97.2 I.B.C.R. 46 (Bankr. D. Idaho 1997). This provision operates to preserve an avoided lien for the benefit of the bankruptcy estate so as to permit the trustee to step into the position of the creditor whose lien has been avoided, thereby preventing a junior lien holder (or a debtor) from improving its position at the expenses of a debtor's unsecured creditors. *In re Mingo*, 97.2 I.B.C.R. at 48 (citing *In re Van De Kamp's Dutch Bakeries*, 907 F.2d 517, 519 (9th Cir. 1990)). *See also In re Heintz*, 198 B.R. 581, 586 (9th Cir. BAP 1996) and *In re Mings*, 91 I.B.C.R. 45, 46 (Bankr. D. Idaho 1991) (both explaining that § 551 operates to preserve an avoided secured interest as against the debtor's claim of exemption).

But a trustee can acquire no greater rights in the property than those of the creditor whose rights the trustee avoids. *In re Mingo*, 97.2 I.B.C.R. at 48. "In other words, Section 551 cannot be utilized by the trustee to cure defective liens to the detriment of other properly perfected secured creditors. When under state law the invalid lien which is sought to be preserved is inferior to subsequent

MEMORANDUM OF DECISION - 8

valid liens, the inferior lien cannot be enhanced by its preservation under Section 551." *Id.* (citations omitted).

Two important bankruptcy principles are implicated under these facts rendering § 551 inapplicable. First, because Mr. Olsen was never granted an enforceable security interest by Debtor, Trustee had no "transfer" to avoid using the strong-arm powers granted by § 544(a). *In re Bannon*, 92 I.B.C.R. at 8. Because there was no security interest in the vehicle to avoid, Trustee succeeded to no rights as a result of his stipulation with Mr. Olsen; he cannot use § 551 to enhance his position or preserve an otherwise nonexistent lien. As a result, because Mr. Olsen's security interest was never enforceable against Debtor, her position is no different than it was prior to the alleged "avoidance" and she is entitled to receive a portion of the proceeds of sale as her exempt property. *In re Mingo*, 97.2 I.B.C.R. at 48.[5]

Second, this Court has held that, under Fed. R. Bankr. P. 7001(2), "an adversary proceeding is necessary to obtain a judgment or order of the Court deeming an otherwise enforceable lien 'avoided.'" *In re Bannon*, 92 I.B.C.R. at 9. Trustee commenced no adversary proceeding to contest Mr. Olsen's claimed

---

[5] Idaho Code § 11-605(3) provides for an exemption of $3,000 in one motor vehicle, while Idaho Code § 11-605(10) provides for an exemption of $800 in any tangible personal property.

MEMORANDUM OF DECISION - 9

interest in the vehicle, instead resolving any dispute via stipulation in the bankruptcy case. No court judgment or order "avoiding" or otherwise declaring Mr. Olsen's lien unenforceable was ever entered.[6] Absent an order, an avoidance of a transfer has not occurred to which § 551(a) can apply. *In re Bannon*, 92 I.B.C.R. at 9. *See also In re Mingo*, 97.2 I.B.C.R. at 48 (holding that absent a legal basis upon which to avoid the lien, the trustee had not shown he should have the benefit of preservation under § 551).

## Conclusion

The Court concludes that Mr. Olsen never held an enforceable lien in Debtor's vehicle that Trustee could avoid. Even if Mr. Olsen held some avoidable interest, Trustee failed to obtain an order from the Court avoiding that lien. Under these facts, § 551 of the Bankruptcy Code does not operate to allow Trustee to trump Debtor's claims of exemption. By separate order, Debtor's

---

[6] The only order the Court entered subsequent to Trustee's stipulation with Mr. Olsen instructed Debtor to turn over the vehicle to Trustee for sale. *See* Docket No. 19.

MEMORANDUM OF DECISION - 10

motion to enforce her exemption claims will be granted, and Trustee will be directed to disburse $3,800 to Debtor from the vehicle sale proceeds.

Dated: June 22, 2006

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 11